FILED by _____ D.C.
ELECTRONIC

**OCT. 8, 2008**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Case No. _____-Civ-_____

# 08-81147-CIV-HURLEY/HOPKINS

| | |
|---|---|
| SEAN PARK, a/k/a Sean Parkoff, and BERRI PARKOFF, On Behalf of Themselves and All Others Similarly Situated, ) ) ) | CLASS ACTION |
| Plaintiffs, ) | |
| vs. ) | |
| THE DANNON COMPANY, INC., ) | |
| Defendant. ) | DEMAND FOR JURY TRIAL |

CLASS ACTION COMPLAINT FOR (1) VIOLATION OF FLORIDA'S DECEPTIVE
AND UNFAIR TRADE PRACTICES ACT, FLORIDA STATUTE §501 *ET SEQ*;
AND (2) BREACH OF EXPRESS WARRANTY

Case No. _____-Civ-_____

Plaintiffs Sean Park, a/k/a Sean Parkoff, and Berri Parkoff (collectively, "plaintiffs"), by and through their attorneys, bring this action on behalf of themselves and all others similarly situated against defendant The Dannon Company, Inc. ("Dannon"). The Court has jurisdiction of this action pursuant to 28 U.S.C. §1332(d)(2). Plaintiffs allege, on information and belief, except for information based on personal knowledge, as follows:

## JURISDICTION AND VENUE

1.     This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which greater than two-thirds of the members of the Class of plaintiffs reside in states other than the state in which Dannon is a citizen.

2.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that many of the acts and transactions giving rise to this action occurred in this district and because defendant:

     (a)     is authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this district through the promotion, marketing, distribution and sale of its products in this district;

     (b)     does substantial business in this district; and

     (c)     is subject to personal jurisdiction in this district.

## NATURE OF THE ACTION

3.     Dannon manufactures, markets and sells yogurt products known as Activia, Activia Light, DanActive and DanActive Light (collectively, the "Products"). Through an extensive and comprehensive nationwide marketing campaign, Dannon claims that the Products are "clinically" and "scientifically" "proven" to provide consumers with health benefits that other yogurt products

- 1 -

Case No. _____-Civ-_____

cannot. Dannon claims in its advertising that these exclusive health benefits result from its proprietary strains of "probiotic" bacteria that are unique to the Products. Dannon refers to these claims as the Products' "core benefit claims." Dannon's representations are false, misleading and reasonably likely to deceive the public.

4.　Dannon's own studies fail to support this advertising message, and a number of them flatly contradict Dannon's claims. It is not proven that Dannon's proprietary strains of probiotic bacteria deliver the unique health benefits claimed in its advertising campaign. Nonetheless, as a result of Dannon's deceptive advertising campaign, Dannon is able to charge a premium for the Products.

5.　Dannon's misleading marketing campaign begins with deceptive names for its proprietary strains of bacteria. These names sound scientific, and imply that the Products deliver the specific claimed health benefits. Dannon's exhaustive advertising campaign builds on this deception.

6.　In February 2006, Dannon began marketing Activia. On its label and in its other advertisements, Dannon stated and continues to state that with the "natural culture *Bifidus* Regularis, Activia eaten every day is clinically proven to help regulate your digestive system in two weeks." It advertised and continues to advertise that because of this proprietary "probiotic" bacteria, Activia is "proven" to improve one's "intestinal rhythm" and "regulate your digestive system."

7.　Less than a year following the release of Activia, in January 2007, Dannon launched DanActive. Dannon follows the very same formula for DanActive that it uses for Activia. On its label and in its other advertisements, it stated and continues to state that "Only DanActive has *L. casei Immunitas*. It is clinically proven to help strengthen your body's defenses" and to improve the body's "immune system." On each package label and container, Dannon prominently prints "IMMUNITY."

- 2 -

Case No. _____-Civ-_____

8.     Dannon's nationwide advertising campaign has been massive and comprehensive, spending far more than $100 million to convey these deceptive messages to consumers throughout the United States. Described as a "360-degree marketing plan," Dannon conveyed and continues to convey its deceptive claims about the Products through a variety of media, including television, newspapers, magazines, direct mail, the Internet, in-store sampling, point of sale displays, and on the Products' labels and labeling. On the Internet, Dannon's Activia is the number one paid listing in the results for "yogurt" on Google.

9.     Through this massive campaign, Dannon has conveyed one message: Dannon's proprietary bacteria strains provide the Products with clinically and scientifically proven health benefits that other yogurt products do not. Each person who has purchased the Products has been exposed to Dannon's misleading advertising message multiple times.

10.     Dannon's advertising and marketing campaign is designed to cause consumers to buy the Products as a result of this deceptive message, and Dannon has succeeded. As a result of this campaign, Dannon's "probiotic" launch has been one of the most successful product launches in recent food-industry history. For example, in the first year, Activia reached sales numbers that less than one-tenth of one percent of all new foods and beverages achieve in their first year in the marketplace.

11.     As a result of the misleading message conveyed through this campaign, Dannon has been able to, in its words, "justify" a 30% - 50% price premium for the Products over other yogurt products.

12.     Plaintiffs bring this action on behalf of themselves and other similarly situated consumers residing in the State of Florida to halt the dissemination of this false and misleading advertising message, correct the false and misleading perception it has created in the minds of

- 3 -

Case No. _____-Civ-_____

consumers, and to obtain redress for those who have purchased the Products. Plaintiffs allege violations of the Florida Deceptive and Unfair Trade Practices Act and breach of the express warranty created by its advertising, including its labeling.

## PARTIES

13.    During times relevant to this matter, plaintiff Sean Park (a/k/a Sean Parkoff) ("Plaintiff Park") resided and continues to reside in Boca Raton, Florida. During the Class period, Plaintiff Park was exposed to and saw Dannon's claims, purchased the Products in reliance on these claims, and suffered injury in fact and lost money as a result of the unfair competition described herein.

14.    During times relevant to this matter, plaintiff Berri Parkoff ("Plaintiff Parkoff") resided and continues to reside in Boca Raton, Florida. During the Class period, Plaintiff Parkoff was exposed to and saw Dannon's claims, purchased the Products in reliance on these claims, and suffered injury in fact and lost money as a result of the unfair competition described herein.

15.    Defendant Dannon is incorporated in the state of Delaware and is headquartered in White Plains, New York. Dannon is registered to do business in the State of Florida, and does business in the State of Florida. Dannon promotes, markets, distributes and sells the Products throughout the United States, including to tens of thousands of consumers in Florida. Dannon is a wholly owned subsidiary of the French company, Danone Group S.A. ("Danone Group").

## FACTUAL ALLEGATIONS

16.    On October 19, 2005, Dannon announced the February 2006 release of Activia, "trailblazing a new way to help Americans improve their intestinal rhythm." Dannon was "thrilled to introduce the first-of-its-kind probiotic yogurt in the U.S. clinically proven to help regulate your digestive system." Since that time, Dannon has consistently conveyed the message to consumers

- 4 -

Case No. _____-Civ-_____

throughout the United States that its proprietary probiotic bacteria is "clinically" and "scientifically" "proven" to deliver health benefits – claims which are not substantiated. In January 2007, Dannon used the same marketing message when it launched DanActive, claiming that its proprietary probiotic bacteria is proven to "strengthen" one's "defenses" and improve one's "immune system."

17.     While scientists have not agreed on a common definition, the Food and Agricultural Division of the United Nations and the World Health Organization define probiotics as "live microorganisms which when administered in adequate amounts, confer a health benefit on the host." There is no scientific consensus about whether healthy people benefit from probiotic bacterial supplements. If probiotic bacteria do have any health benefits, they must survive the digestive tract in sufficient quantities to achieve the possible benefit. However, there is no consensus on the quantities of probiotics people might require to achieve a probiotic effect, if probiotics have any such effect in healthy people. No scientific study has demonstrated that the bacteria Dannon puts in the Products is probiotic.

18.     Using the term as a marketing tool, without regard to whether it actually delivers any probiotic benefits, Dannon defines probiotics as bacteria that "must bring health benefits to their host."

## DANNON'S CLAIMS ABOUT ACTIVIA

19.     Dannon's marketing claims "Activia® lowfat yogurt, and Activia Light® nonfat yogurt are made with *Bifidus* Regularis™, a natural probiotic culture that can help regulate your digestive system by helping with slow intestinal transit. Activia® and Activia Light® are the only yogurt products that contain this specific probiotic strain."

- 5 -

Case No. _____-Civ-_____

20.     *Bifidus* Regularis is Dannon's trademarked probiotic *Bifidodbacterium animalis* strain DN-173-010.  Dannon's marketing department chose the "Regularis" name to deceptively imply scientific significance and credibility to Dannon's inadequately tested and trademarked probiotic strain.

21.     The consumer, unaware that Regularis is nothing more than Dannon's cleverly developed marketing name, is led to believe that Dannon's strain promotes regularity.  The "is" suffix is nothing more than Dannon's deceptive attempt to suggest scientific derivation.

22.     Despite inadequate testing and admissions by its parent company, Danone Group, that Activia provides no proven additional health benefits to the average healthy individual, Dannon states that Activia is for everyone ("Activia® is for anyone who wants to help naturally regulate their digestive system").

23.     The label on each container of Activia substantially appears as follows:



Case No. _____-Civ-_____

24.    The label on each carton of Activia substantially appears as follows:



25.    On every Activia label, Dannon also prominently claims:    "**CLINICALLY PROVEN** to help in two weeks, when eaten daily" and "contains natural probiotic culture – **Bifidus Regularis™** – only in Activia®."    The labeling promotes Activia as "[t]he delicious way to help naturally regulate your digestive system" and claims that "Activia® is scientifically proven to help reduce long intestinal transit time," which benefits the digestive system.    The labeling also contains the following claims:

### Frequently Asked Questions

#### Q.  What is Activia™?

A.    Dannon® Activia™ is a delicious lowfat yogurt with the natural probiotic culture Bifidus Regularis™.  Activia™ is clinically proven to help regulate your digestive system when eaten daily for two weeks by helping to reduce long intestinal transit time.

#### What are probiotics?

A.    The word probiotic literally means "for life."  Essentially, a probiotic is a culture that, if eaten in sufficient quantities, provides a positive benefit for the host that goes beyond primary nutritional effects.

Case No. _____-Civ-_____

### What is Bifidus Regularis™?

A.    Bifidus Regularis is a probiotic culture scientifically proven to survive passage through the digestive system, arriving into the large intestine as a live culture that stays active.

### How long until I will feel a difference from Activia™?

A.    Activia is clinically proven to naturally regulate your digestive system in two weeks when eaten daily.

Dannon did not and does not have substantiation for these statements, which are false and misleading and reasonably likely to deceive the average consumer.

26.    Dannon deceptively describes *Bifidus* Regularis on its activia.com webpage. This website is accessible to the general public and Dannon's advertisements in other media promote this website. Without sufficient testing or adequate substantiation, Dannon makes the following claims:

**What It Does**

Specialists at Dannon® selected Bifidus Regularis™ for Activia® because it survives passage through the digestive tract, arriving in the colon as a living culture. Once there, it plays a beneficial role in your intestinal ecosystem.

**Two Weeks Can Make a Difference** Eating, as part of a balanced diet and healthy lifestyle, Activia every day for two weeks delivers enough Bifidus Regularis™ to help regulate your digestive system by helping with slow intestinal transit. And continuing to eat Activia will maintain that benefit. Try it.

27.    Dannon's Activia television commercials convey the same message conveyed by Dannon in other media. A typical Activia television commercial claims: "Eating Activia® everyday is clinically proven to help regulate your digestive system in two weeks."

28.    Television commercials for Activia have aired regularly across the country since the launch of Activia. The first television advertisements began in February 2006 on broadcast networks and on cable channels that skew more heavily towards female viewers, such as the Lifetime channel and Food Network.

- 8 -

Case No. _____-Civ-_____

29.    To reinforce the deceptive message, and in accordance with its pre-determined marketing plan, Dannon began in the fall of 2006 to tout a money-back guarantee offer which it named the "Activia Challenge." This part of Dannon's marketing campaign was included in all of the forms of media Dannon has used.

| | |
|---|---|
| 1st Woman: | Sometimes I feel irregular and bloated. |
| 2nd Woman: | Does that ever happen to you? |
| 3rd Woman: | Not lately.  I took the Activia challenge. |
| 4th Woman: | Eat it every day for two weeks. |
| 5th Woman: | It works or it's free. |
| Announcer: | Seems everyone's talking about the Activia two week challenge. Activia with the natural culture *Bifidus* Regularis is clinically proven to help naturally regulate your digestive system in two weeks. |
| 6th Woman: | Mmmmm, heard about the Activia challenge? |
| 7th Woman: | I told you.  [Laughter] |
| Announcer: | Activia, it works or it's free. |

30.    In addition to making untested and unsubstantiated claims, Dannon's nationwide advertising claim that "it works or it's free" is likely to deceitfully induce a placebo effect on consumers, irrespective of any actual probiotic effect.

31.    Dannon's claims that "eating probiotic foods like Activia® . . . has been clinically proven to help regulate your digestive system" and that Activia is clinically proven to help "bloating, heaviness, and difficult and painful defecation," are also false and misleading.  Dannon does not have adequate substantiation for these claims as they relate to the general public.  Further, for some, Activia actually worsens conditions affiliated with the digestive system.  For example, after

- 9 -

Case No. _____-Civ-_____

consumers with irritable bowel syndrome try yogurt products such as Activia, the Products can make them feel worse.

## DANNON'S CLAIMS ABOUT DANACTIVE

32.    Less than one year following the release of Activia, in January 2007, Dannon launched DanActive, a "cultured probiotic dairy drink that has been clinically proven to help naturally strengthen the body's defenses when consumed daily." Dannon's chief marketing officer predicted "that DanActive will be the next blockbuster." On the strength of Dannon's deceptive marketing campaign, this prediction became a reality.

33.    As with Activia, Dannon conveys that DanActive can provide clinically and scientifically proven health benefits that other similar products cannot because it contains proprietary probiotic bacteria. Dannon's marketing for DanActive claims that the bacteria "*L. casei* Immunitas™," found only in DanActive, is "clinically proven to help strengthen your body's defenses" and "has a physiological effect on our body's regular natural defense functions." Dannon unequivocally claims that "[i]t is due to DanActive™ and its *L. casei* Immunitas™ contribution to the intestine's 3 defense levels that our body is more efficient in responding against small daily challenges."

34.    *L. casei* Immunitas is Dannon's trademarked probiotic *L. casei* strain DN-114 001. Just as with its use of "Regularis" in Activia, Dannon's marketing department chose the "Immunitas" name to imply scientific certainty and give credibility to Dannon's claims when in fact Dannon does not have adequate substantiation for the claims.

35.    The average consumer, unaware that Immunitas is nothing more than Dannon's cleverly developed marketing name, is led to believe that Dannon's strain will improve one's

Case No. _____-Civ-_____

immune system and protect against developing disease and illness. The Latinate "Immunitas" is nothing more than Dannon's deceptive attempt to suggest scientific derivation.

36.    Dannon claims that DanActive is for "everybody who wishes to strengthen his body's defenses." However, there is no adequate support for this claim. In fact, one of Dannon's own studies concluded that DanActive did not perform better than traditional yogurt.

37.    On DanActive labels and labeling, Dannon also prominently states: "Clinically Proven To Help Strengthen Your Body's Defenses."

38.    Dannon further conveys and reinforces this claim by prominently printing on every label of DanActive the word "IMMUNITY":

 

39.    DanActive labels and labeling also claim: "About 70% of your immune system is in your digestive tract. This is where DanActive goes to work with the exclusive *L. casei* Immunitas™ cultures." The labeling for DanActive further states:

Case No. _____-Civ-_____

### DanActive™ is Clinically Proven to Help
### Strengthen Your Body's Defenses.

#### What is DanActive™?

DanActive™ is a delicious, probiotic dairy drink that is clinically proven to help strengthen your body's defense system.

#### How does DanActive™ work?

DanActive™ goes to work directly in your digestive tract, where about 70% of your immune system is located.

#### What makes DanActive™ work?

A key ingredient in DanActive™ is its exclusive *L. casei* Immunitas™ culture. Each bottle of DanActive™ contains 10 billion *L. casei* Immunitas™ cultures. These cultures remain active in the digestive tract where they have a positive effect on your digestive tract's immune system. Evidence from many studies demonstrate that daily consumption of DanActive™ with *L. casei* Immunitas™ helps strengthen your body's defenses.

#### What are probiotics?

The word probiotic literally means "for life." Essentially, a probiotic is a culture that, if eaten in sufficient quantities, gives health benefits beyond basic nutrition.

40.     Dannon claims that DanActive will improve everyone's immune system, including those of young children, older children, adults and seniors. For example, an advertisement on danactive.com represents that DanActive helps the daily lives of the whole family:

- Sam, 6 years old, reports "My mom says DanActive helps our bodies stay alert against challenges."



- 12 -

Case No. _____-Civ-_____

- Claire, 12 years old, has a stressful and hectic lifestyle because of homework and chores, but she stays healthy because "DanActive helps me strengthen my body's defenses."



- Rachel, 36 years old, has a mother's typical life of "kids, traffic, work, stress, groceries, home" where "[e]ven eating and sleeping seem to become secondary." But, she stays fit and healthy because "DanActive helps me keep my balance and my defenses at their best."



- Grandparents Anne and Louis are at a "vulnerable" age and "take DanActive to help strengthen [their] body's natural defenses."



- 13 -

Case No. _____-Civ-_____

41.     The following typical Dannon television commercial conveys the same message regarding the health benefits of DanActive:

| Father: | [Reading newspaper at breakfast and sitting with his family.] It says here that stress [pause] can weaken our immune system. |
|---|---|
| Daughter: | [Opening refrigerator and reading a DanActive box.] And about 70% of our immune system is in our digestive tract. [Bottom of screen reads: 70%. About 70% of your immune system is in your digestive tract.] |
| Father: | Right, apparently a culture called *L. casei* Immunitas can help. It's clinically proven to help strengthen your body's defense system. |
| Daughter: | [While mother is pictured drinking DanActive.] Only DanActive has *L. casei* Immunitas. |
| Father: | [While son is pictured drinking DanActive.] We should try this DanActive. |
| Announcer: | New DanActive. Help strengthen your body's defenses. |

42.     Dannon also conveys in its print and other advertising that DanActive is clinically and scientifically proven to benefit students under the stress of exams, build seniors' resistance to infections, and improve the body's "defense response" during periods of "intense exercise." These statements are not adequately supported by the scientific evidence or otherwise substantiated.

## DANNON'S OWN SUBSTANTIATION DEMONSTRATES THE FALSITY OF ITS CLAIMS

43.     According to a June 2006 report on probiotics published by the American Academy of Microbiology – a project which received financial support from Dannon itself – "there is no conclusive evidence that altering the microbiota of a healthy human adult is beneficial." The report, entitled "Probiotic Microbes: The Scientific Basis," was prepared by the American Academy of Microbiology, a leadership group of the American Society of Microbiology, which is the leading professional association of microbiologists.

- 14 -

Case No. _____-Civ-_____

44.    Dannon deceptively conveys the marketing message that the Products have been clinically proven by "many studies" to deliver unique benefits, and by citing to 25 to 30 clinical studies, depending on when the claim was made. Outside of the context of marketing, Dannon concedes it does not even have this many studies.

45.    A typical example of Dannon's reference to studies occurred on August 30, 2007, when Dannon aired a DanActive television advertisement that ended by stating at the top of the screen "25 studies of DanActive and Lactobacillus Immunitas" with "Clinically proven" at the lower right. As with the rest of the subject marketing campaign, Dannon intended to convey the message that its claims have been clinically proven by 25 scientifically reliable studies performed on humans. Dannon claims that 30 publications substantiate its claims. Of these 30, two were duplicate studies and one was a review, leaving 27 separate studies. Less than half of these 27 studies were conducted on people and could possibly be called clinical studies. (According to the National Institutes of Health, a clinical study is "a type of research study that tests how well new medical approaches work in people.") Ten of the 27 studies were conducted in animals and six were *in vitro*, meaning in neither animal nor human subjects. Only 11 studies involved people and only four of these looked at whether DanActive could prevent illness. None of these four studies provided by Dannon show that DanActive prevents illness in healthy adults. *In vitro* and animal testing are the basis for the majority of Dannon's "clinical" studies of DanActive. This type of testing does not, and cannot, provide an adequate basis for the claims that Dannon makes for the effect of DanActive in people. According to a report of a Joint FAO/WHO Working Group on Drafting Guidelines for the Evaluation of Probiotics in Food (FAO Food and Nutrition, 2002), *in vitro* tests "are not fully adequate to predict the functionality of probiotic microorganisms in the human body."

- 15 -

Case No. _____-Civ-_____

46.     According to the report of a Joint FAO/WHO Working Group on Drafting Guidelines for the Evaluation of Probiotics in Food (FAO Food and Nutrition, 2002): "Probiotics for human use will require substantiation of efficacy with human trials. . . . The principal outcome of efficacy studies on probiotics should be proven benefits in human trials, such as statistically and biologically significant improvement in condition, symptoms, signs, well-being or quality of life; reduced risk of disease or longer time to next occurrence; or faster recovery from illness."

47.     Dannon's claims about the benefits of DanActive are not substantiated by its own studies. Despite Dannon's advertisements and websites depicting the benefits of DanActive in healthy children and adults, few of its studies looked at healthy children and adults. The few they did were fatally flawed.

48.     Similarly, Dannon's claim that DanActive benefits students under stress is not substantiated by its one study in students. Dannon claims that DanActive "helped to improve the body's production of defense cells in situation of intense intellectual stress during exams periods." In its one study, DanActive had no effect on stress, since stress increased equally in both DanActive consumers and placebo consumers. And this study provides no evidence that the effect of DanActive on key markers was significant enough to matter. The study did not compare rates between those consuming DanActive and those consuming a placebo.

49.     Likewise, Dannon's claim that numerous studies substantiate the ability of DanActive to build seniors' resistance to infections is not substantiated by its one study in healthy adults. Dannon researchers gave older Italian men and women DanActive to drink every day for three weeks in an "open pilot" study, meaning they knew they were taking something that might help them. Nevertheless, they were just as likely to get colds or gastrointestinal illnesses as a comparable

Case No. _____-Civ-_____

group of seniors who did not drink DanActive. Rather than conclude that DanActive improved seniors' resistance, the Dannon researchers noted that a larger, double-blind study was actually needed.

50.    Similarly, Dannon's claim that DanActive improves the body's defense response during periods of "intense exercise" is not based on 25 to 30 studies, but on a single study in which competitive athletes consumed the equivalent of five bottles of DanActive – five times the recommended amount of DanActive. Researchers did not determine whether the lesser decrease in Natural Killer (NK) cells in DanActive drinkers was significant enough to protect the athletes from getting sick.

51.    Likewise, Dannon's commercials, print advertisements, Internet advertisements, and labels all claim that Activia with *Bifidus* Regularis is "for anyone who wants to help naturally regulate their digestive system." However, Dannon actually found that "[i]n subjects whose digestive system functions regularly, no marked change or risk of diarrhea was observed."

52.    For example, as part of its message about Activia's benefits to the digestive system, Dannon says that it has found that "slow intestinal transit is a source of true discomfort for a large proportion of the population and results in daily distress" and that "some of the symptoms include bloating, heaviness, and difficult and painful defecation." However, Dannon never studied this. In none of the four human studies of Activia did researchers ask the participants if Activia helped relieve bloating, heaviness, or difficult and painful defecation, so Dannon's studies do not show that Activia can relieve the symptoms described in their advertisements and on their website. As even one of Dannon's studies' notes, among the data concerning the effects of Activia by Danone Group

- 17 -

Case No. _____-Civ-_____

and its specific proprietary strain on intestinal transit, there are currently relatively few results available concerning the relationship between intestinal transit and bifidobacteria.

53.    Despite inadequate and inapposite testing, Dannon continues to unequivocally claim that because of its specially formulated and unique bacteria in the Products, the Products are clinically and scientifically proven to deliver health benefits other yogurt products cannot.

## DANNON'S MARKETING SUCCESS

54.    Despite merely providing the benefits of traditional yogurt products, Dannon's Products cost significantly more than traditional yogurt. For example, *Consumer Reports* found that Activia costs about 30% more per ounce than Dannon's own traditional yogurt. Through the uniform deceptive and misleading marketing campaign, Dannon leads consumers to believe that the scientifically and clinically proven probiotic benefits "justify" the price differential.

55.    Through its marketing campaign, Dannon set out to not merely sell its Products, but to sell them at a premium by creating a compelling story about its "probiotic" bacteria. Because of its claims, Dannon was able to, in its own words, justify the premium charged for its Products over other yogurt products. Dannon's chief marketing officer explained: "To justify this type of price increase, you have to have a relevant offer and the marketing has to tell the story." Franck Riboud, Danone Group's Chairman and CEO, echoed these sentiments. The CEO stated that his goal was to "cannibalize" the regular Dannon yogurt market in exchange for the higher profit margins afforded by the so-called "blockbuster" product, Activia:

> I'm very pleased to organize a cannibalization between a plain yoghurt and Activia. Please switch all of you from the plain yoghurt to Activia. I will find [inaudible] solution for the plain yoghurt, but I am making more money on Activia than the plain yoghurt.

- 18 -

width

Case No. _____-Civ-_____

56.     Dannon's CEO acknowledged that the success of Activia depended not on the proven benefits of the product, but rather on how effective its advertising proved. Addressing analysts, he stated:

> The success of Activia is not coming from the product itself. The probiotic, everybody knows now about probiotic all over the world. The success is coming from the way you launch the product, how do you enrich the product, the marketing . . . .

57.     As one financial analyst wrote in describing the subject advertising campaign: "Like antioxidants, most Americans don't understand what probiotics actually do. But, it's a great marketing word." To accomplish this goal – persuading consumers to switch from a less expensive yogurt product – Dannon had to paint a compelling story that all persons would enjoy the Products' added and exclusive health benefits. The story Dannon's marketing tells is more fiction than fact.

58.     Dannon spent over $100 million from January 2006 through July 2007 on the subject advertising campaign. As a result of this campaign, the sale of the Products skyrocketed. The response from retailers and consumers has exceed Dannon's expectations. Activia accounted for $128 million of Dannon's $678 million yogurt sales in 2006. That number was expected to reach $300 million by the end of 2007.

59.     Dannon's "probiotic" yogurt advertising launch was one of the most successful product launches in recent food-industry history. For example, in the first year, Activia reached sales that less than one-tenth of one percent of all new foods and beverages achieve in their first year in the marketplace. Further, within six months of launch, Activia alone had achieved a remarkable 70% to 80% aided awareness among all consumers, not just Dannon customers.

Case No. _____-Civ-_____

## CLASS ACTION ALLEGATIONS

60.    Plaintiffs bring this lawsuit on behalf of themselves and the proposed Class

members under Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure. The proposed Class

consists of:

> All persons who purchased in Florida DanActive, DanActive Light, Activia or
> Activia Light.  Excluded from the Class are defendant's officers, directors and
> employees and those who purchased the Products for the purpose of resale.

61.    The Class comprises tens of thousands of consumers throughout Florida.  The

Class is so numerous that joinder of all members of the Class is impracticable.  There are questions

of law and fact common to the Class.  The common questions include:

(a)    whether Dannon had adequate substantiation for its claims prior to making

them;

(b)    whether the claims discussed above are true, or are misleading, or reasonably

likely to deceive;

(c)    whether Dannon's alleged conduct violates public policy;

(d)    whether the alleged conduct constitutes violations of the laws asserted herein;

(e)    whether Dannon engaged in false or misleading advertising;

(f)    whether plaintiffs and Class members have sustained monetary loss and the

proper measure of that loss;

(g)    whether plaintiffs and Class members are entitled to an award of punitive

damages; and

(h)    whether plaintiffs and Class members are entitled to declaratory and

injunctive relief.

Case No. _____-Civ-_____

62.     Plaintiffs' claims are typical of the claims of the proposed Class, and plaintiffs will fairly and adequately represent and protect the interests of the proposed Class. Plaintiffs do not have any interests antagonistic to those of the Class. Plaintiffs have retained counsel competent and experienced in the prosecution of this type of litigation. The questions of law and fact common to the Class members, some of which are set out above, predominate over any questions affecting only individual Class members.

63.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually. The trial and the litigation of plaintiffs' claims is manageable.

64.     Unless a class is certified, defendant will retain monies received as a result of its conduct that was taken from plaintiffs and proposed Class members. Unless a classwide injunction is issued, defendant will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

65.     Dannon has acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief with respect to the Class as a whole.

## COUNT I

**For Violations of the Florida Deceptive and Unfair Trade Practices Act –
Florida Statutes §501.201 *et seq.* on Behalf of Plaintiffs and the Class**

66.     Plaintiffs reallege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth here.

67.     This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Ace, Florida Statutes §501.201 *et seq.* (the "Act"). The stated purpose of the Act is to

Case No. _____-Civ-_____

"protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or practice."

68.    Plaintiffs are consumers as defined by Florida Statutes §501.203. The Products are goods within the meaning of the Act. Dannon is engaged in trade or commerce within the meaning of the Act.

69.    Florida Statutes §501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

70.    Florida Statutes §501.204(2) states that "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to [section] 5(a)(1) of the Federal Trade Commission Act." Dannon's unfair and deceptive practices are likely to mislead – and have misled – the consumer acting reasonably in the circumstances, and violate Florida Statutes §500.04 and 21 U.S.C. §343. Further, FTC rules and regulations require that Dannon have the same level of substantiation for its advertisements at the time they are made as they claimed in the advertisement. Dannon claims clinical proof.

71.    Dannon has violated the Act by engaging in the unfair and deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

72.    Plaintiffs and the Class have been aggrieved by Dannon's unfair and deceptive practices in that they paid for the Products.

Case No. _____-Civ-_____

73.     Pursuant to Florida Statutes §501.211(1), plaintiffs and the Class seek a declaratory judgment and Court order enjoining the above-described wrongful acts and practices of defendant and for restitution and disgorgement.

74.     Additionally, pursuant to Florida Statutes §§501.211(2) and 501.2105, plaintiffs and the Class makes claims for damages, attorneys' fees and costs.

## COUNT II

### Breach of Express Warranty
### On Behalf of Plaintiffs and the Class

75.     Plaintiffs reallege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth here.

76.     Plaintiffs, and each member of the Class, formed a contract with defendant at the time plaintiffs and the other members of the Class purchased the Products. The terms of that contract include the promises and affirmations of fact made by Dannon on its Product labels and through its marketing campaign, as described above. This product labeling and advertising constitutes express warranties, became part of the basis of the bargain, and is part of a standardized contract between plaintiffs and the members of the Class on the one hand, and Dannon on the other.

77.     All conditions precedent to Dannon's liability under this contract, including notice, have been performed by plaintiffs and the Class.

78.     Dannon breached the terms of this contract, including the express warranties, with plaintiffs and the Class by not providing the product which could provide the benefits described above.

79.     As a result of Dannon's breach of its contract, plaintiffs and the Class have been damaged in the amount of the purchase price of the Products they purchased.

- 23 -

Case No. _____-Civ-_____

## PRAYER FOR RELIEF

Wherefore, plaintiffs pray for a judgment:

A.    Certifying the Class as requested herein;

B.    Awarding plaintiffs and the proposed Class members damages;

C.    Awarding restitution and disgorgement of Dannon's revenues to plaintiffs and the proposed Class members;

D.    Awarding declaratory and injunctive relief as permitted by law or equity, including enjoining defendant from continuing the unlawful practices as set forth herein, and directing defendant to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by defendant by means of any act or practice declared by this Court to be wrongful;

E.    Awarding plaintiffs and the Class punitive damages;

F.    Ordering Dannon to engage in a corrective advertising campaign;

G.    Awarding attorneys' fees and costs; and

H.    Providing such further relief as may be just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

DATED: October **8**, 2008                COUGHLIN STOIA GELLER
                                          RUDMAN & ROBBINS LLP
                                          JONATHAN M. STEIN (SBN 009784)
                                          CULLIN AVRAM O'BRIEN (SBN 597341)


                                          _____
                                          JONATHAN M. STEIN

- 24 -

Case No. _____-Civ-_____

120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)
jstein@csgrr.com
cobrian@csgrr.com

COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
JOHN J. STOIA, JR.
TIMOTHY G. BLOOD
LESLIE E. HURST
THOMAS J. O'REARDON II
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
jstoia@csgrr.com
tblood@csgrr.com
leslieh@csgrr.com
toreardon@csgrr.com

SHEPHERD FINKELMAN MILLER
    & SHAH, LLP
JAYNE A. GOLDSTEIN (SBN 144088)
1640 Town Center Circle, Suite 216
Weston, FL 33326
Telephone: 954/515-0123
954/515-0124 (fax)
jgoldstein@sfmslaw.com

GILMAN AND PASTOR, LLP
DAVID PASTOR
225 Franklin Street, 16th Floor
Boston, MA 02110
Telephone: 617-742-9700
617/742-9701 (fax)
dpastor@gilmanpastor.com

CUNEO GILBERT & LaDUCA, L.L.P.
JONATHAN W. CUNEO
PAMELA GILBERT
507 C Street, N.E.
Washington, DC 20002
Telephone: 202/789-3960
202/789-1813 (fax)
jonc@cuneolaw.com
pamelag@cuneolaw.com

Case No. _____-Civ-_____

THE CLIMACO LAW FIRM
JOHN R. CLIMACO
SCOTT D. SIMPKINS
DAVID M. CUPPAGE
JENNIFER L. GARDNER
55 Public Square, Suite 1950
Cleveland, Ohio 44113
Telephone: 216/621-8484
216/771-1632 (fax)
jrclim@climacolaw.com
sdsimp@climacolaw.com
dmcupp@climacolaw.com
jlgard@climacolaw.com

FRANK PISCITELLI CO., LPA
FRANK PISCITELLI
55 Public Square, Suite 1950
Cleveland, Ohio 44113
Telephone: 216/931-7000
216/931-9925 (fax)
frank@piscitellilaw.com

SCOTT KALISH CO., L.L.C.
D. SCOTT KALISH
1468 West 9th Street, Suite 405
Cleveland, Ohio 44113
Telephone: (216) 502-0570
Scottkalishcollc@cs.com

Attorneys for Plaintiffs

JS 44 (Rev. 2/08)    **CIVIL COVER SHEET**

FILED by 28 D.C.
ELECTRONIC

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)    **NOTICE: Attorneys MUST Indicate All Re-filed**

**OCT. 8, 2008**

**I. (a) PLAINTIFFS**

SEAN PARK, a/k/a Sean Parkoff, and BERRI PARKOFF, On Behalf of Themselves and All Others Similarly Situated

**(b)** County of Residence of First Listed Plaintiff    Palm Beach
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Jonathan M. Stein, Coughlin Stoia Geller Rudman & Robbins LLP
120 E. Palmetto Park Road, Suite 500, Boca Raton, FL 33432
561-750-3000

**DEFENDANTS**

The Dannon Company, Inc.

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA.- MIAMI

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

Attorneys (If Known)

**(d)** Check County Where Action Arose:    ☐ MIAMI- DADE    ☐ MONROE    ☐ BROWARD    ✔ PALM BEACH    ☐ MARTIN    ☐ ST. LUCIE    ☐ INDIAN RIVER    ☐ OKEECHOBEE    HIGHLANDS

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
✔ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ✔ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

58 CV 81147 HURLEY/HOPKINS

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

**V. ORIGIN** (Place an "X" in One Box Only)

✔ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. RELATED/RE-FILED CASE(S).**
(See instructions second page):

a) Re-filed Case ☐ YES ✔ NO    b) Related Cases ☐ YES ✔ NO

JUDGE _____    DOCKET NUMBER _____

**VII. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity): 28 U.S.C. § 1332(d)(2)  Diversity class action.
Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.201 et seq.)

LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

**VIII. REQUESTED IN COMPLAINT:**    ✔ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ _____    CHECK YES only if demanded in complaint:    JURY DEMAND: ✔ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE    October 8, 2008

**FOR OFFICE USE ONLY**

AMOUNT 350.00    RECEIPT # 72484S    IFP